# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

Civil Action No.:

QWEST COMMUNICATIONS INTERNATIONAL INC., a Delaware corporation,

Plaintiff,

v.

CONQWEST, INC., a Massachusetts corporation,

Defendant.

---

# AMENDED COMPLAINT AND JURY DEMAND

---

Plaintiff Qwest Communications International, Inc. ("Qwest"), for its Amended Complaint against Defendant ConQwest, Inc. ("ConQwest"), alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Qwest is a Delaware corporation with its principal place of business at 1801 California Street, Denver, Colorado, 80202. Qwest is qualified to do business in the State of Colorado.

2. Defendant ConQwest is a Massachusetts corporation with a place of business at 84 October Hill Road, Bldg. 7, Holliston, Massachusetts, 01746.

3. Jurisdiction over the Defendant is vested in this Federal Court in that Defendant transacts business, resides and has committed torts in this District.

4. Defendant has offered services or controlled the offering of services in this District, which activities include services utilizing the infringing mark and designations.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) & (c).

6.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

7.  Qwest is engaged in, *inter alia*, the business of providing diversified communications goods and services to businesses, residential consumers, and intermediary businesses that redistribute Qwest's goods and services to end-users.

8.  Qwest is among the largest providers of communications goods and services to businesses and residential consumers. Qwest is a recognized leader in its industry.

9.  Qwest and its predecessors-in-interest have provided (and continue to provide) a diverse array of communication services, including without limitation managed security services, virus protection services, network intrusion detection services, virtual private network (VPN) services, epolicy management services, internet services, network management services, design of data information networks, computer programs, installation and maintenance of electronic data and information networks, intranet services, extranet services, digital fiber network services, broadband multimedia services, switched digital services, local and long distance telephone services, call back services, frame relay services, wireless telecommunications services, credit cards and credit card services, and the services identified in paragraphs 11, 12 and 13, below (the "Qwest Goods and Services").

10. Qwest has provided at least some of the Qwest Goods and Services since 1981.

11. Qwest owns a variety of trademarks and service marks consisting of or incorporating the elements "QWEST" and "Q" (collectively, the "Qwest Marks") for a myriad of communications related goods and services, including without limitation various Internet related services. Some of the Qwest Marks are presented in special form, including a capitalized and stylized letter "Q" and prominent use of the color blue. The Qwest Marks include but are not limited to the following marks.

12. Qwest owns United States Trademark Registration Number 1,966,694 (the "'694 Registration") for the mark QWEST for use in connection with "telecommunication services, namely the electronic transmission of voice, data and messages."

13. Qwest owns United States Trademark Registration Number 2,210,992 (the "'992 Registration") for the mark QWEST (Stylized) for use in connection with "telecommunication services, namely long distance telephone services and electronic transmission of voice, data and messages."

14. Qwest owns United States Trademark Registration Number 2,659,826 (the "'826" Registration") for the mark REQWEST for use in connection with "telecommunications services, namely, telephone communications services; electronic transmission of voice, video, messages and data; providing access to a fiber-optic telecommunications network; providing multi-user access to a global computer information network, and video conferencing services.

15. The '694, '992, and '826 Registrations (the "Qwest Registrations") constitute *prima facie* evidence of Qwest's exclusive right to use the registered trademarks in commerce and of the validity and ownership of these marks. Qwest is entitled to constructive use rights, including nationwide priority rights, as of the filing dates of the applications that matured into the Qwest Registrations.

16. Qwest also has a number of pending United States Trademark Applications (the "Qwest Applications") that include the mark QWEST. The Qwest Applications cover a wide variety of goods and services related to communications goods and services.

17. When the Qwest Applications mature into registrations, they shall constitute *prima facie* evidence of Qwest's exclusive right to use the registered trademarks in commerce and of the validity and ownership of these marks. Qwest shall be entitled to constructive use rights, including nationwide priority rights, as of the filing dates of the Qwest Applications.

18. In addition to its statutory rights, Qwest has obtained common law rights to each

of the Qwest Marks by virtue of its continuous use of those marks in commerce in connection with the goods and services described above.

19. Qwest and its predecessors-in-interest have used at least some of the Qwest Marks in interstate commerce to indicate the source of Qwest Goods and Services since 1981.

20. Qwest has expended several hundred million dollars advertising and marketing the Qwest Goods and Services under the Qwest Marks and establishing the Qwest Marks as indicators of source, origin, and quality.

21. Qwest has promoted and advertised the Qwest Marks in various local, regional, and national sources including print, internet, radio, and television media directed at the market for communications goods and services generally (including without limitation Internet related goods and services) and the market for the Qwest Goods and Services in particular.

22. As a result of Qwest's extensive use and promotion of the Qwest Marks, the Qwest Marks have gained strong public recognition and are famous and renown.

23. As a result of the wide-spread and omnipresent nature of the Qwest Goods and Services, consumers are well-aware of the distinctive Qwest Marks and would consider the Qwest Marks to be famous and renown.

24. Qwest has earned billions of dollars in revenue as a result of its sale of the Qwest Goods and Services under the Qwest Marks.

25. Defendant ConQwest is engaged in the business of providing goods and services including, but not limited to, many of the same communication goods and services that Qwest offers: intrusion detection solutions and services, VPN services, e-policy management solutions, and designing, installing, and troubleshooting of internet security systems composed of software and hardware.

26. ConQwest advertises and promotes its goods and services on the World Wide Web through its web site located at <www.conqwest.com>.

27. ConQwest has adopted and used "ConQwest" as a trade name, domain name, trademark and service mark (collectively, the "Infringing Marks") in connection with its goods and services. Conqwest has adopted and used a prominent, stylized, capital letter "Q," often in the color blue, in and with the Infringing Marks in connection with its goods and services.

28. Qwest, the famous Qwest Marks, and the business of Qwest are known to ConQwest and upon information and belief were known to ConQwest at the time it adopted the Infringing Marks.

29. On information and belief, Qwest, the famous Qwest Marks, and the business of Qwest were known to ConQwest at the time it began offering its goods and services under the Infringing Marks.

30. ConQwest's use of the Infringing Marks on goods and services dilutes the famous Qwest Marks.

31. The Infringing Marks are confusingly similar to the Qwest Marks.

32. The Infringing Marks are similar in sound and appearance to the Qwest Marks. The most prominent element of the Infringing Marks, "QWEST," is identical in appearance, sound and meaning to the most prominent element of the Qwest Marks, "QWEST." The prominent, capitalized and stylized letter "Q," (commonly presented in the color blue) which Defendant has adopted and which Defendant has incorporated in and used both alone and with and as part of the Infringing Marks, is very similar in appearance to the prominent, capitalized, and stylized "Q" (commonly presented in the color blue) found in the Qwest Marks.

33. ConQwest uses the Infringing Marks on goods and services that are either identical or highly related to the Qwest Goods and Services.

34. ConQwest promotes and sells goods and services under the Infringing Marks using the same channels of trade used by Qwest to promote and sell the Qwest Goods and Services, including without limitation the World Wide Web.

35. ConQwest's first commercial use of the Infringing Marks for its goods occurred in 1999, nearly eighteen years after Qwest's first use of the Qwest Marks in connection with communications services.

36. ConQwest filed for United States Trademark Application Serial Number 75/858096 (the "'096 Application") for the mark E-MINDER ELECTRONIC POLICY MANAGER BY CONQWEST (and design) for use in connection with "Browser-based computer software that is used to track and educate employees on corporate policies regarding e-mail, computer and global computer networks usage."

37. The '096 Application was filed on November 16, 1999, which is after the application date for the Qwest Registrations.

38. On December 11, 2002, Qwest filed an Opposition in the United States Trademark Trial and Appeal Board (TTAB) against the '096 Application, alleging likelihood of confusion with the Qwest Marks, and dilution of the Qwest Marks.

39. On July 16, 2003 ConQwest expressly abandoned the '096 Application without Qwest's consent.

40. On October 30, 2003 judgment was entered against ConQwest by the TTAB and registration of Defendant's '096 Application was refused.

41. ConQwest has filed United States Trademark Application Serial Number 76/050,931 (the "'931 Application") for the mark CONQWEST for use in connection with "Designing, installing, and troubleshooting Internet security systems composed of software and hardware" (as amended).

42. The '931 Application was filed on May 18, 2000, which is after the application date for the Qwest Registrations.

43. The '931 Application describes in part the mark CONQWEST as follows: "the name ConQwest is spelled with a larger 'Q' overlapping the 'n' and 'w.' The 'Q' is royal blue.

The remaining letters are black."

44. ConQwest, in violation of the law, continues to use the Infringing Marks in a manner that is confusingly similar to the Qwest Marks, including but not limited to on identical or confusingly similar goods and services and in identical channels of trade.

45. ConQwest's use of the Infringing Marks, and ConQwest's actions described herein, are likely to cause confusion, deception and/or mistake in the marketplace, the relevant industry, and all channels of trade for the Qwest Goods and Services.

46. ConQwest's use of the Infringing Marks, and ConQwest's actions described herein, are likely to cause dilution of the famous Qwest Marks.

47. ConQwest's use of the Infringing Marks, and ConQwest's actions described herein, have been (and continue to be) deliberate, willful, and with disregard to the rights of Qwest.

48. Qwest has sustained and will continue to sustain irreparable injury as a result of ConQwest's conduct, which injury is not compensable by the award of monetary damages.

**FIRST CAUSE OF ACTION**
**(Trademark Infringement – 15 U.S.C. § 1114(1))**

49. Qwest incorporates herein by reference each and every allegation in the preceding paragraphs.

50. Defendant ConQwest's acts as described herein are likely to cause confusion, deception, or mistake.

51. Defendant ConQwest's acts constitute use in commerce of a reproduction, counterfeit, copy or colorable imitation of registered trademarks, in connection with the sale, offering for sale, distribution or advertising of products, on or in connection with which such use is likely to cause confusion or to cause mistake or to deceive, in violation of 15 U.S.C. § 1114(1).

52. ConQwest's acts have been committed willfully and with intent, making this an exceptional case and entitling Qwest to recover its costs of the action and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

53. As a direct and proximate result of ConQwest's acts, Qwest has suffered and continues to suffer irreparable injury for which no adequate remedy exists at law.

**SECOND CAUSE OF ACTION**
**(Trademark Infringement, Unfair Competition, And False Designation Of Origin – 15 U.S.C. § 1125(a))**

54. Qwest incorporates herein by reference each and every allegation in the preceding paragraphs.

55. ConQwest's acts as alleged herein constitute, among other things, false designations of origin, false or misleading descriptions of fact, or false or misleading representations of fact which are likely to cause confusion or mistake, or to deceive the public as to the origin, sponsorship, or approval of the goods and services of ConQwest, and otherwise constitute infringement and unfair competition in violation of 15 U.S.C. § 1125(a).

56. ConQwest's acts have been committed willfully and with intent, making this an exceptional case and entitling Qwest to recover its costs of the action and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

57. As a direct and proximate result of ConQwest's acts, Qwest has suffered and continues to suffer irreparable injury for which no adequate remedy exists at law.

**THIRD CAUSE OF ACTION**
**(Trademark Dilution – 15 U.S.C. § 1125(c))**

58. Qwest incorporates herein by reference each and every allegation in the preceding paragraphs.

59. The Qwest Marks are distinctive and famous. The Qwest Marks have been and

continue to be extensively promoted and marketed nationwide. The Qwest Marks have gained strong national public recognition and are eligible for protection against dilution.

60. Defendant ConQwest's false, misleading and unauthorized use of the Qwest Marks in the advertising and promotion for its goods and/or services has diluted and will continue to dilute the strength and value of the Qwest Marks.

61. ConQwest's willful and deliberate use of the Qwest Marks in the advertising and promotion for its goods and/or services, which are beyond the ambit of Qwest's quality control and inspection procedures, has tarnished and will continue to tarnish the Qwest Marks.

62. Without injunctive relief, Qwest has no means by which to control the continuing injury to its reputation and goodwill or of the continuing dilution of its trademark. Qwest has been and will continue to be irreparably harmed. No amount of money damages can adequately compensate Qwest if it loses the ability to control the use of its name, reputation, and goodwill through the false and unauthorized use of its trademark. Qwest is entitled to injunctive relief prohibiting ConQwest from using the Qwest Marks in conjunction with its goods and/or services.

## FOURTH CAUSE OF ACTION
## (Denial Of Trademark Registration – 15 U.S.C. § 1119)

63. Qwest incorporates herein by reference each and every allegation in the preceding paragraphs.

64. Alternatively, if registration has already issued, the Court should order that any registration based on ConQwest's United States Trademark Application Serial Number 76/050,931, published for opposition January 18, 2005, be cancelled in the United States Patent and Trademark Office.

**FIFTH CAUSE OF ACTION**
**(State Dilution-- Mass. Gen. Laws Ch. 110B §12)**

65. Qwest incorporates herein by reference each and every allegation in the preceding paragraphs.

66. The Qwest Marks are distinctive and renown. The Qwest Marks have been and continue to be extensively promoted and marketed nationwide. The Qwest Marks have gained strong public recognition in the state of Massachusetts and are eligible for protection against dilution.

67. Defendant ConQwest's false, misleading and unauthorized use of the Qwest Marks in the advertising and promotion for its goods and/or services has diluted and will continue to dilute the strength and value of the Qwest Marks.

68. ConQwest's willful and deliberate use of the Qwest Marks in the advertising and promotion for its goods and/or services, which are beyond the ambit of Qwest's quality control and inspection procedures, has tarnished and will continue to tarnish the Qwest Marks.

69. ConQwest's willful and deliberate use of the Qwest Marks in the advertising and promotion for its goods and/or services, has diminished the uniqueness and individuality and will continue diminish the uniqueness and individuality of the Qwest Marks.

70. Without injunctive relief, Qwest has no means by which to control the continuing injury to its reputation and goodwill or of the continuing dilution of its trademark. Qwest has been and will continue to be irreparably harmed. No amount of money damages can adequately compensate Qwest if it loses the ability to control the use of its name, reputation, and goodwill through the false and unauthorized use of its trademark. Qwest is entitled to injunctive relief prohibiting ConQwest from using the Qwest Marks in conjunction with its goods and/or services.

WHEREFORE, in consideration of the foregoing, Qwest respectfully requests that this

Court enter an Order granting the following relief:

a) For judgment that the Qwest Marks have been infringed and continue to be infringed by ConQwest;

b) For judgment that the Qwest Marks have been diluted and continue to be diluted by ConQwest pursuant to 15 U.S.C. § 1125(c);

c) For judgment that the Qwest Marks have been diluted and continue to be diluted by ConQwest pursuant to Mass. Gen. Laws Ch. 110B §12;

d) Preliminarily and permanently enjoining ConQwest and each of its agents, employees, servants, officers, directors, successors in interest, heirs, assigns and all persons, firms or corporations, acting by or under their authority, in active concert or privity or in participation with it from using the Qwest Marks or any confusingly similar marks in any way or using any word, words, phrases, symbols, logos, etc. which would create a likelihood of confusion, mistake, or deception therewith, including without limitation the Infringing Marks, in connection with or in the marketing, offering, selling, disposing of, licensing, leasing, transferring, displaying, advertising, reproducing, developing, or manufacturing of ConQwest's business, services, and goods;

e) Preliminarily and permanently enjoining ConQwest to recall from all its offices and all others, whether persons, firms, or corporations, acting by or under their authority, in active concert or privity or in participation with it, any material containing the Qwest Marks in any way and any word, words, phrases, symbols, logos, etc. which would create a likelihood of confusion, mistake and/or deception therewith, including without limitation the Infringing Marks, in connection with or in the marketing, offering, selling, disposing of, licensing, leasing, transferring, displaying, advertising, reproducing, developing, or manufacturing of

ConQwest's business, goods and services;

f) Preliminarily and permanently enjoining ConQwest, its officers, agents, employees, and all persons acting in concert with them, from infringing the Qwest Marks and/or engaging in further such unlawful acts and from reaping any additional commercial advantage from its misappropriation of the rights of Qwest and all affiliated and related companies of Qwest in the Qwest Marks and/or the registrations of the Qwest Marks;

g) Requiring ConQwest to destroy, at its sole and exclusive cost, all materials in its possession or under its control that contain infringements of the Qwest Marks;

h) Requiring ConQwest to transfer ownership of all infringing domain names, including the domain name <conqwest.com> to Qwest, and preliminarily and permanently enjoining ConQwest from registering and/or using any domain name containing any marks belonging to Qwest, or any similar marks;

i) Ordering the Director of the Patent and Trademark Office to cancel all ConQwest trademark registrations for the Qwest Marks and any word, words, phrases, symbols, logos, etc. which would create a likelihood of confusion, mistake, and/or deception therewith, including without limitation any registration based on ConQwest's Trademark Application Serial Number 76/050,931; and

j) Granting Qwest such additional, other, or further relief as the Court deems proper and just.

**JURY DEMAND**

Plaintiffs demand trial by jury on all issues so triable.

Respectfully submitted,

DATED: March 1, 2005

______________________________

Christopher Weld, Jr. (BBO # 522230)
Raymond P. Ausrotas (BBO # 640315)
28 State Street, 31st Floor
Boston, MA 02109
(617) 720-2626
(617) 227-5777 (facsimile)

Kurt S. Lewis (Reg. No. 11,386)
**LEWIS MEYERS & SCHEID, LLC**
2300 Fifteenth Street, Suite 320
Denver, Colorado 80202
(303) 534-5040
(303) 534-5039 fax

Attorneys for Plaintiff
Qwest Communications International, Inc.

Address of Plaintiff:
1801 California Street
Denver, Colorado 80202