UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSSETTS

DOCKET NO. 04-11878-RCL

| | |
|---|---|
| QWEST COMMUNICATIONS INTERNATIONAL, INC., a Delaware Corporation, <br><br> Plaintiff, <br> v. <br><br> CONQWEST, INC., a Massachusetts Corporation <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

**DEFENDANT'S FIRST REQUEST FOR INTERROGATORIES TO THE PLAINTIFF QWEST COMMUNICATIONS INTERNATIONAL, INC.**

Now comes the Defendant, CONQWEST, INC. (CONQWEST), and hereby propounds the following Interrogatories to be answered, under oath, by the Plaintiff, Qwest Communications International, Inc. (Qwest), pursuant to Fed.R.Civ.P. 33. The Plaintiff shall provide answers to these interrogatories and return such answers to the offices of Macero and Associates, P.C., One Thompson Square, Suite 301, Boston, Massachusetts 02129, on or before the expiration of thirty (30) days from the service of the request.

DEFINITIONS

1. The terms "QWEST" "Plaintiff," "you," "your," "the corporation" and "yourself," mean the Plaintiff, Qwest Communications International, Inc..

2. The term "CONQWEST" refers to Defendant, CONQWEST, INC.

3. The term "communication" means any written or oral transmission of fact, information, intention, opinion, including utterance, notation or statement of any

nature whatsoever, and including but not limited to documents and correspondences.

4. The term "identify" or "identification" shall include the name, residential and business address of the individual or entity, the position or occupation of the individual, the telephone number, social security number and date of birth of the individual. If the interrogatory requires the identification of a document, please include the date of the document, the title of the document, the type of document, the author of the document and the recipient of the document.

5. The term "document" means all written or printed matter of any kind, including but not limited to legal documents, letters, memoranda, business records, interoffice communications, data stored electronically, recorded (including tape recorded), graphic, or photographic matters, photographs, electronic documents, videotapes, computerized information, E-mail or tangible thing which is the subject of the request.

6. The term "marketing" shall mean any and all written, printed, electronic data, videotapes, computerized information E-mail or other tangible thing that describes, depicts, explains, shows the services offered by the Plaintiff which is the subject of the request.

7. The term "dispute" shall mean the current litigation and all of the patent, trademark claims therein made by the Plaintiff.

## INTERROGATORIES

1. Please identify the name(s), address(es), current business address(es), current position or title and length of time employed of the person(s), identify any and all individuals with whom you conferred, or documents you consulted, in responding

to these interrogatories on behalf of the Plaintiff including interrogatory numbers which they contribute to.

2. Please identify the name(s) and address(es) or current whereabouts of every person either known to you or believed by you to have knowledge of any matter relevant to the subject matter of this action, including but not limited to the design, implementation, marketing, distribution, management of the services provided by Plaintiff which Plaintiff identified as being overlapping (or refer to the Plaintiff) that are the subject of this matter.

3. Please describe in detail all of the communications services offered by Qwest as described in Paragraphs 9, 11, 12 and 13 of the Complaint, including but not limited to dates first offered by Qwest, the regions offered in, the customers, and the amount of annual revenue for each service.

4. Please describe in detail the advertising and marketing campaigns undertaken by Qwest as described in Paragraphs 20 and 21 of the Complaint.

5. Please identify any and all documents regarding products or services offered by Plaintiff that currently use or have used the "Q" or "Qwest" trademark, the date the trademark(s) were first used on such product(s) or service(s), and the markets in which the trademarks were first used on such product(s) and services(s).

6. Please describe in detail how the Defendant's use of "CONQWEST" dilutes the "famous" Qwest marks as alleged in Paragraph 30 of the Complaint.

7. Please describe in detail how the Defendant's use of "CONQWEST" is confusingly similar to the Qwest marks as alleged in Paragraph 31 of the Complaint.

8. Please describe in detail how the Defendant's use of "CONQWEST" is similar in either "sound", "appearance" and "meaning" to the Qwest marks as alleged in Paragraph 32 of the Complaint, including a factual basis for each such allegation.

9. Please describe in detail how the goods and services provided by the Defendant are either "identical" or "highly related" to the Qwest Goods and Services as alleged in Paragraph 33 of the Complaint, including a detailed description of the markets in which Qwest's Goods and Services were first offered, the dates on which Qwest's Goods and Services were first offered, and the customers whom purchased such Goods and Services that are "identical" or "highly related" to the goods and services provided by the Defendant.

10. Please identify the date(s) on which Qwest claims to have started offering Goods and Services as described in Paragraphs 9, 11, 12 and 13 of the Complaint, the specific Goods and Services offered, and the markets in which Qwest ceased offering the Goods and Services.

11. Please describe in detail how the Defendant's Trademark Application Serial Number 76/050,931 for the mark "CONQWEST" is likely to cause confusion, deception and/or mistake in the relevant marketplace, industry and all channels of trade for Qwest as alleged in Paragraph 45 of the Complaint, including a showing of specific evidence of customer confusion or mistake.

12. Please describe in detail how the Defendant's Trademark Application Serial Number 76/050,931 for the mark "CONQWEST" is likely to cause dilution of the Qwest marks as alleged in Paragraph 46 of the Complaint.

13. Please describe in detail how the Defendant's use of "CONQWEST" has and will continue to tarnish the Qwest marks as alleged in Paragraph 61 of the Complaint.

14. Please describe in detail how the Defendant's use of "CONQWEST" has diminished the "uniqueness and individuality" of the Qwest marks as alleged in Paragraph 69 of the Complaint.

15. Please identify the date(s) on which and the regions in which Qwest began offering the services described in Paragraph 9 of the Complaint, including but not limited to managed security services, virus protection services, network intrusion detection services, virtual private network (VPN) services, e-policy management services, network management services, and the design of data and information networks.

16. Please identify the name(s) and address(es) of all of Qwest's predecessors-in-interest as described in Paragraph 19 of the Complaint.

17. Please identify the goods and services that Qwest offers that are alleged to be the "same" as goods and services offered by the Defendant as alleged in Paragraph 25 of the Complaint and the dates on which Qwest began offering said goods and services.

18. Please list each and every witness you intend to call at trial, including name(s), address(es), telephone number(s), and if employed by the Plaintiff, the current business address(es), current position or title and length of time employed of the person(s) and substance of their expected testimony.

19. Please identify each person whom you have retained as an expert or expect to call as an expert witness at trial, state the subject matter on which the expert is expected to testify, and state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

20. Please describe in detail the percentage of Qwest's total revenues annually attributable to goods and services provided to business, residential consumers and

intermediary business that redistribute Qwest's goods and services as described in Paragraph 7 of the Complaint on a product by product or service by service basis.

21. Please identify each "intermediary" business that redistributes Qwest's goods and services, the regions in which each "intermediary" business distributes such goods and services, and the date on which each "intermediary" business began distributing said goods and services for Qwest as described in Paragraph 7 of the Complaint.

22. Please describe in detail the reasons why Qwest filed an Opposition in the United States Trademark Trial and Appeal Board (TTAB) against the Defendant's Trademark Application Serial Number 75/858096 as described in Paragraph 38 of the Complaint.

23. Please describe in detail how the acts of the Defendant are false designations of origin, false or misleading descriptions of fact, or false or misleading representations of fact which are likely to cause confusion, deception or mistake as described in Paragraph 55 of the Complaint.

24. Describe in detail how Defendant's use of "CONQWEST" will continue injure Qwest's reputation, goodwill, and continue to dilute Qwest's trademark as described in Paragraph 62 of the Complaint.

Date: February 11, 2005

Defendant,
CONQWEST, Inc.
By their attorneys,

Rosemary A. Macero, BBO# 544271

Richard F. Cheslofska, BBO# 658710
Macero & Associates, P.C.
One Thompson Square, Suite 301
Boston, MA 02129
617-242-5000

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on 2-11-05