UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| QWEST COMMUNICATIONS INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> CONQWEST, INC., <br><br> Defendant. | Civil Action No. 04-cv-11878 RCL |

**OPPOSITION TO DEFENDANT CONQWEST, INC.'S
MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS**

**I.    INTRODUCTION**

Plaintiff Qwest Communications International, Inc. ("Qwest") is a communications company that provides internet security services. These services include virtual private networks, firewalls, and anti-virus software, among many others. Qwest has provided these services since, at latest, its January 4, 1999 acquisition of Icon CMT, then a leading internet security solutions provider. Defendant ConQwest, Inc. ("ConQwest"), incorporated in March of 1999, also provides internet security services, including virtual private networks, firewalls, and anti-virus software. Qwest brought this lawsuit demanding that ConQwest cease its use of the Qwest trademark, to prevent customer confusion and protect the goodwill associated with Qwest's name.

From the time Qwest brought its complaint to the time ConQwest filed its motion to compel, the parties had been exploring settlement avenues. As part of their settlement talks, agreed to conserve costs and postpone discovery. Throughout this phase of the case, the discovery deadlines were always extended with the understanding that the amount of time

provided under the rules would be afforded for response if the parties went forward with discovery.

On November 11, 2005, the parties filed a joint motion to amend the scheduling deadlines, jointly stating that the "parties have had extended discussions regarding settlement in this case *and have delayed discovery and conserved costs* as a part of those discussions." (Docket No. 23 at 1.) To Qwest's surprise, on November 22, shortly before a scheduled mediation session before Magistrate Judge Alexander, ConQwest sent a letter demanding immediate production of documents.

On December 20th, one of Qwest's attorneys called ConQwest's attorney to discuss a mutually agreeable manner in which to conduct discovery. ConQwest's attorney declined to speak with Qwest's attorney. Shortly thereafter, without further attempt to confer, ConQwest filed this motion to compel.

In the meantime, beginning in November, 2005, Qwest began a diligent effort to collect and produce documents responsive to sixty-two broad categories of documents, many of which call for documents dating from nearly a decade ago. Qwest's outside and in-house counsel interviewed a dozen potential witnesses, ascertained the location of responsive paper documents, and arrived at a list of thirty search terms that could be used to search the hard disks and network drives of nearly thirty potential custodians. The process of searching and reviewing these documents is nearly complete, and Qwest expects to produce the bulk of the responsive documents by January 30, 2006, with a second set of production expected shortly thereafter.[1]

---

[1] Qwest notes that its anticipated production date is one day *earlier* than that requested by ConQwest in its motion.

Had counsel for ConQwest agreed to speak with Qwest's counsel when he called, ConQwest would have learned each of these facts, and the need to file the instant motion would have been obviated.

Qwest therefore respectfully requests that this Court deny ConQwest's motion for failure to comply with D. Mass. L.R. 37.1, D. Mass. L.R. 7.1, and Fed. R. Civ. P. 37(a)(2), and furthermore, should deny ConQwest's motion, without prejudice, as premature.

## II.     PROCEDURAL HISTORY

Qwest filed this action on August 27, 2004.[2] (*See* Docket No. 1.) On February 1, 2005, ConQwest served its First Request for Production of Documents. (*See* Ex. A.)

On March 3, 2005, Qwest's counsel and ConQwest's counsel discussed settlement. ConQwest's counsel agreed, so that the parties could concentrate on settlement discussions and conserve costs, that Qwest need not respond to ConQwest's outstanding discovery requests until March 31, 2005. (*See* Ex. B (confirming the agreement).) The parties continued their discussions throughout March. On March 28, 2005, counsel for ConQwest again assented to an extension of time, through April 6, for Qwest to respond to the outstanding discovery requests. (*See* Ex. C.)

By the beginning of April, the parties appeared to be close to settling the case. On May 9, ConQwest requested a settlement conference with the Court, noting that "the Parties are within $20,000.00 of settling this matter." (Docket No. 15 at 2.) On May 27, Qwest indicated its assent to a settlement conference before this Court. (*See* Docket No. 16.)

Throughout these discussions—indeed, as a precondition to these discussions—the parties had agreed to conserve costs by postponing discovery. This agreement was memorialized

---

[2]  Qwest had previously filed an action against ConQwest in the District of Colorado, but dismissed that action without prejudice when ConQwest contested personal jurisdiction in the District of Colorado.

on June 29, 2005. In a joint motion to amend the pretrial schedule filed that day, the parties jointly stated: "The parties have had extended discussions regarding settlement in this case *and have delayed discovery and conserved costs as a part of those discussions.*" (Docket No. 17 at 1 (emphasis added).) In light of this representation, the Court allowed the joint motion, and extended the deadline for fact discovery from June 15, 2005 to November 15, 2005. On November 11, near the close of discovery, ConQwest again joined in a motion to extend the pretrial scheduling, again stating that "[t]he parties have . . . delayed discovery and conserved costs as a part of [settlement] discussions." (Docket No. 23 at 1 (emphasis added).)

On November 10, 2005, Qwest's newly-retained counsel, Heidi E. Harvey of Fish & Richardson P.C., entered an appearance in the case. On November 16, Ms. Harvey introduced herself, by letter, to ConQwest's counsel, and provided a new settlement offer.[3]

On November 22, 2005, ConQwest's counsel wrote to Ms. Harvey and unconditionally demanded that all documents be produced by November 30. (*See* Ex. D.) On November 29, Ms. Harvey responded, noting the parties' agreement that discovery was to be postponed during settlement discussions. (*See* Ex. E.) On November 30, counsel for ConQwest responded, again unconditionally demanding immediate production of documents. (*See* Ex. F.) At no point in these letters did ConQwest request or invite a discussion of the issues raised by ConQwest's demands.

On December 2nd, Ms. Harvey responded, noting that the parties' filings with this Court evidenced the parties' agreement to postpone discovery during settlement discussions. (*See* Ex. G.) Nevertheless, on December 6, Ms. Harvey proposed that the parties engage in limited mutual discovery to further settlement talks.

On December 20, Thomas A. Brown, an associate at Fish & Richardson, counsel for Qwest, attempted to call Rosemary A. Macero, ConQwest's attorney, to discuss Qwest's proposal for limited discovery, or alternatively, a schedule for Qwest's discovery responses. Ms. Macero answered the phone, but refused to speak with Mr. Brown. Mr. Brown asked her to clarify her position, asking if she was refusing to speak with him. Ms. Macero answered that, indeed, she would not speak with him, and would only speak with Ms. Harvey.

On January 10, Mr. Brown filed his Notice of Appearance, in the event that Ms. Macero's refusal to speak with him was predicated on a misunderstanding with respect to Mr. Brown's status as counsel for Qwest.

On January 11, without conferring with opposing counsel and without written response to Qwest's proposals for limited discovery, ConQwest filed this motion to compel.

### III.   ARGUMENT

#### A.   ConQwest's Motion Should Be Denied for Failure to Comply with D. Mass. L.R. 37.1, Fed. R. Civ. P. 37(a)(2), and D. Mass. L.R. 7.1

Local Rule 37.1(a) of the United States District Court for the District of Massachusetts requires:

> Before filing any discovery motion, including any motion for sanctions or for a protective order, counsel for each of the parties ***shall confer in good faith*** to narrow the areas of disagreement to the greatest possible extent. ***It shall be the responsibility of counsel for the moving party to arrange for the conference.*** Conferences may be conducted over the telephone. Failure of opposing counsel to respond to a request for a discovery conference within seven (7) days of the request shall be grounds for sanctions, which may include automatic allowance of the motion.

---

[3] Letters including settlement offers have not been attached as exhibits, to preserve their confidentiality.

5

D. Mass. L.R. 37.1; *see Syrjala v. Total Healthcare Solutions*, 186 F.R.D. 251, 252-32 (D. Mass. 1999) (imposing a $1,500 fine on an attorney for failure to comply with this rule); *Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 101 (D. Mass. 1996).

Local Rule 37.1(b) provides that, if a discovery motion is filed, the "The motion shall include a certificate in the margin of the last page that the provisions of this rule have been complied with."

Similarly, Fed. R. Civ. P. 37(a)(2) requires that a discovery "motion must include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action." *See also* D. Mass. L.R. 7.1; *Converse, Inc. v. Reebok Int'l, Ltd.,* 328 F. Supp. 166, 170-71 (D. Mass. 2004) (Lindsay, J.) (holding that "[t]he purpose of Rule 7.1 is to conserve judicial resources by encouraging parties to narrow the contours of disagreement before bringing their dispute to the court.").

ConQwest's motion fails to comply with the letter and the spirit of the both the Federal and Local rules. ConQwest's motion includes no certification that L.R. 37.1 has been complied with.

Instead, ConQwest's motion certifies, under L.R. 7.1(a)(2), as follows

> The undersigned counsel sent letters to Plaintiff's Counsel on November 22, 2005 and November 30, 2005 requesting responses to the Defendant's First Request for the Production of Documents, and as noted above, Plaintiff has failed to provide any responses to the Defendant's First Request for the Production of Documents.

(Docket No. 29 at 2.) This certification was manifestly insufficient. Neither letter sent by ConQwest's counsel sought to arrange for a conference, as required by the rule. And, when Mr. Brown attempted to arrange such a conference (despite the fact that it was ConQwest's

responsibility, as moving party, to arrange the conference), Ms. Macero *refused to speak with him*.

ConQwest's summary filing of its motion to compel undermines the purpose behind the meet-and-confer requirement of the Local and Federal rules. "[A]t least one purpose of the rules is to avoid premature motions." *Hasbro*, 168 F.R.D. at 101. ConQwest's motion was plainly premature, as set forth in more detail below. Moreover,

> the purpose of a full consultation pursuant to Local Rule 37.1(A) is to enable the parties to attempt to narrow, if not resolve, their dispute. It is not up to the Court to expend its energies when the parties have not sufficiently expended their own. The rules are purposeful, not arbitrary.

*Id.* ConQwest's motion has caused the Court to expend valuable resources unnecessarily. Had ConQwest in fact attempted to confer with Qwest's counsel, or taken Mr. Brown's telephone call, it would have learned of Qwest's proposal for the collection and production of documents, and would have had an opportunity to object or propose an alternative methodology, if needed. Instead of attempting to *confer*, ConQwest issued *demands*. (*See* Exs. D & F.) Qwest's counsel nonetheless attempted to confer, but he was rebuffed, and ConQwest sought assistance from the Court. This is not the procedure contemplated by the Local or Federal rules. This Court should therefore deny, without prejudice, ConQwest's motion to compel.

### B. ConQwest's Motion Should Be Denied as Premature

In addition to being procedurally defective, ConQwest's motion is premature, as Qwest is proceeding with document collection and production as expeditiously as is humanly possible.

One of Qwest's core assertions in this case is that it has provided the same products and services as ConQwest, under the Qwest name, since before ConQwest existed—i.e., that Qwest has priority to use the Qwest name for the goods and services offered by ConQwest, namely, network security products. Qwest asserts that it has provided these services at least since its acquisition of two companies, Colorado SuperNet in October of 1997 (*see* ex. H) and Icon CMT

in January of 1999 (*see* ex. I). Both acquisitions predate ConQwest's date of incorporation in the end of March, 1999 (*see* ex. J) and ,most importantly, ConQwest's alleged date of first use of its name as a trademark in April 1999.[4]

Until at least November of 2005, the parties had agreed to "delay[] discovery and conserve[] costs." (Docket No. 23 at 1.) In mid-November, 2005, faced with a markedly decreased likelihood of consummating a settlement, and confronted with ConQwest's sudden and unexpected demand for immediate document production, outside and in-house counsel for Qwest jump-started the process of interviewing potential witnesses to uncover determine where potentially responsive documents (many dating back seven years or more) might be stored. These interviews resulted in leads to other potential witnesses. Ultimately, the trail of interviews led to the discovery of sixteen boxes of documents in Weehawken, New Jersey, constituting the archived records of the ICON CMT entity whose relevance needed to be ascertained, and to thirty potential witnesses who had no physical documents, but whose computer hard drives, emails, and network drives needed to be scanned to determine if they had any relevant electronic documents.

Together with the witnesses, Qwest's counsel arrived at a list of thirty search terms that could be used to find potentially relevant documents on their hard drives, in their emails, or on their network drives. To speed the review process, a subset of these terms, and a subset of the potential witnesses, were selected as most likely to yield relevant results. Qwest's corporate security group copied all user files from the hard disks belonging to this group of users. It then

---

[4] The evidence of ICON CMT acquisition by Qwest and rebranding under the QWEST trademark was disclosed to defendant in the November 16, 2005, letter of Heidi E. Harvey, introducing herself to Ms. Macero as Qwest's new counsel in the matter and offering a new settlement proposal.

ran a keyword search on these users' files, as well as on the users' network drives, and on all of the users' electronic mail messages (wherever stored). The results of this first round of searching was presented, in an electronic database, to a group of contract employees, specially hired by Qwest, to review for relevance and privilege, supervised by Qwest's in-house and outside counsel.

In the meantime, Qwest's in-house counsel arranged for the sixteen boxes in Weehawken, New Jersey to be repacked and shipped to Qwest's corporate headquarters in Denver, where she is personally reviewing each document in the boxes for relevance and privilege.

The contract attorneys are expected to complete their review by January 26, and Qwest expects to be able to produce Bates-stamped, confidentiality-marked documents by January 30. The review of the paper documents dating from 1999 is likewise expected to be completed in time for a January 30 production, with the remainder of these documents to be available shortly thereafter.

Qwest then intends to expand its search to include the full range of potential custodians, and the full range of potentially relevant keywords. Qwest expects this second round of document review to be completed in time for production approximately one week later. (*See* Ex. K.)

Had ConQwest conferred in good faith with Qwest's attorneys before filing its motion to compel, ConQwest would have been apprised of Qwest's near round-the-clock document collection efforts. It would have had the opportunity to interpose objections, make suggestions, or express dissatisfaction at the manner in which Qwest proposed to collect documents. Instead, ConQwest's attorney declined to speak with Qwest's attorney when he called to address the

outstanding discovery. In so doing, ConQwest filed a motion that will shortly be moot, costing this Court valuable time, and distracting Qwest and its attorneys from what should be their primary task at present—collecting, reviewing, and producing documents.

This is precisely the situation contemplated by Local Rule 37.1, Local Rule 7.1, and Fed. R. Civ. P. 37(a)(2). ConQwest's motion should be denied for failure to comply with these rules, and furthermore as premature, as Qwest is engaged in document collection and production in as expeditious a manner as is humanly possible.

### IV.   CONCLUSION

For the foregoing reasons, Qwest respectfully requests that this Court DENY ConQwest's motion to strike without prejudice.

Dated:  January 25, 2006
/s/ Heidi E. Harvey_____
Heidi E. Harvey (BBO #548114)
Thomas A. Brown (BBO #657715)
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA  02110-2804
Tel:  (617) 542-5070
Fax: (617) 542-8906
Attorneys for Plaintiff

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 25th day of January, 2006.

/s/ Heidi E. Harvey_____
Heidi E. Harvey

21252529.doc